UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MICHAEL PERRONE, as a participant in and on behalf of the Johnson & Johnson Savings Plan, and on behalf of a class of all others who are similarly situated, | : : : : : : | Civil Action No.: 19-00923 (FLW)(TJB) |
| *Plaintiff*, | : : | |
| v. | : : | |
| JOHNSON & JOHNSON, PETER FASOLO, DOMINIC J. CARUSO, and JOHN DOES 1-20, | : : : : | |
| *Defendants.* | : : | |
| TOM TARANTINO and ROCHELLE ROSEN, individually and on behalf of all others similarly situated, | : : : : | Civil Action No.: 19-1115 (FLW)(TJB) |
| *Plaintiffs*, | : : | |
| v. | : : | |
| JOHNSON AND JOHNSON PENSION AND BENEFITS COMMITTEE, PETER FASOLO, and JOHN DOES 1-10, | : : : : | |
| *Defendants.* | : : | |

***CORRECTED* MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' UNOPPOSED MOTION FOR APPOINTMENT OF
INTERIM CO-LEAD COUNSEL PURSUANT TO FED. R. CIV. P. 23(G)**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 2

III. ARGUMENT ......................................................................................................... 4

    A.   The Court Should Appoint Interim Co-Lead Counsel ............................. 4

    B.   Proposed Interim Co-Lead Counsel Have Done Considerable Work and Investigation in Pursuing the Claims Asserted ........................................ 5

    C.   Proposed Interim Co-Lead Counsel Have Experience in Handling ERISA Class Actions and Other Complex Litigation and Are Knowledgeable About ERISA Law ................................................................................................ 6

    D.   Proposed Interim Co-Lead Counsel Will Commit the Resources Necessary to Represent the Class ................................................................................ 8

    E.   Interim Plaintiff's Liaison Counsel ........................................................... 9

IV.  CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Buonasera v. Honest Co., Inc.*,
   318 F.R.D. 17 (S.D.N.Y. 2016) .................................................................................................. 9

*Durso v. Samsung Elecs. Am., Inc.*,
   No. 2:12-CV-5352 DMC JAD, 2013 WL 4084640 (D.N.J. Aug. 7, 2013) ............................... 4

*Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*,
   No. CV 16-2740 (JMV), 2017 WL 1196458 (D.N.J. Mar. 13, 2017) ....................................... 5

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   240 F.R.D. 56 (E.D.N.Y. 2006) ................................................................................................. 5

*In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*,
   258 F.R.D. 260 (S.D.N.Y. 2009) ............................................................................................... 5

*In re Terazosin Hydrochloride*,
   220 F.R.D. 672 (S.D. Fla. 2004) ................................................................................................ 5

*Jander v. Ret. Plans Comm. of IBM*,
   910 F.3d 620 (2d Cir. 2018) ....................................................................................................... 8

*Nowak v. Ford Motor Co.*,
   240 F.R.D. 355 (E.D. Mich. 2006) ............................................................................................ 5

*Yaeger v. Subaru of Am., Inc.*, No. CIV.A. 14-4490 JBS/K,
   2014 WL 7883689 (D.N.J. Oct. 8, 2014) .................................................................................. 4

**Statutes**

29 U.S.C. § 1001 ............................................................................................................................ 1

29 U.S.C. § 1109, 1132 .................................................................................................................. 4

**Rules**

Fed. R. Civ. P. 23(g) ........................................................................................................ 1, 2, 4, 10

**Other Authorities**

Manual for Complex Litigation, Fourth, § 21.11, at 246 (Federal Judicial Center 2004) ............. 2

I.     **INTRODUCTION**

Pursuant to Rule 23(g) of the Federal Rules of Civil Procedure, Plaintiffs Michael Perrone, Tom Tarantino, and Rochelle Rosen ("Plaintiffs"), on behalf of themselves and all other similarly situated participants and beneficiaries in the Johnson & Johnson Savings Plan (the "Savings Plan"), the Johnson & Johnson Savings Plan for Union Represented Employees (the "Union Plan") and the Johnson & Johnson Retirement Savings Plan (the "Retirement Plan") (collectively, the "Plans"), submit this Memorandum of Law in support of their motion requesting an Order appointing Berger Montague PC ("Berger"), Schneider Wallace Cottrell Konecky Wotkyns LLP ("Schneider"), and Zamansky LLC ("Zamansky") as Interim Plaintiff's Co-Lead Counsel and Lite DePalma Greenberg, LLC ("Lite DePalma") as Interim Plaintiffs' Liaison Counsel.[1]

Plaintiffs are participants in the Plans, through which they purchased Johnson & Johnson stock. Johnson & Johnson sponsors the Plans. On January 22, 2019, Plaintiff Michael Perrone filed his complaint (No. 3:19-cv-00923-FLW-TJB, at Dkt #1). Plaintiff Perrone has retained the Berger, Schneider and Lite DePalma law firms to represent him in this action. On January 25, 2019, Plaintiffs Tom Tarantino and Rochelle Rosen filed their complaint (No. 3:19-cv-01115-FLW-TJB, at Dkt #1). Plaintiffs Tarantino and Rosen have retained the Zamansky law firm to represent them. Both complaints allege that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., and Plaintiffs have moved to consolidate these actions.

Plaintiffs bring the instant motion for appointment of interim co-lead and liaison counsel in order to ensure the orderly, efficient and economical coordinated adjudication of this case. The Manual for Complex Litigation recognizes that where there are "overlapping, duplicative, or

---

[1] Counsel for the parties conferred on February 28, 2019, and Defendants do not oppose this motion.

1

competing suits pending … designation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation, Fourth, § 21.11, at 246 (Federal Judicial Center 2004).

As set forth below, the proposed law firms satisfy each of the requirements of Fed. R. Civ. P. 23(g), and thus should be appointed to interim lead positions. Such an order will formally authorize Plaintiffs' counsel to make the necessary decisions on behalf of the putative class and avoid any uncertainty or confusion regarding whether Plaintiffs' counsel are authorized to speak for the putative class. For these reasons, and those that follow, the Court should enter the Proposed Order filed with this Motion.

## II.     FACTUAL BACKGROUND

Plaintiffs allege that for decades, Johnson & Johnson's senior leadership has been aware that its flagship product, talc Baby Powder, contains asbestos (a known carcinogen), and it has taken concerted action to hide that information from the public. Compl. ¶¶ 6-9.[2] These efforts were successful, and until recently the public has been generally unaware. *Id*. Moreover, the concealment of this information has caused the prices of Johnson & Johnson's stock to be artificially inflated. *Id*.

At all relevant times, the Plans have included as an investment option shares of stock of Johnson & Johnson, the Plans' sponsor. *Id*. ¶ 5. Through their Plan accounts, the Plans' participants invested approximately $4.4 billion in Johnson & Johnson stock as of year-end 2017. By no later than April 13, 2017, it was inevitable that the truth about asbestos in Johnson & Johnson's talc

---

[2] All factual allegations are from the Perrone Complaint (No. 3:19-cv-00923-FLW-TJB, at Dkt #1).

2

products would become known to the public. *Id*. ¶ 10. On that date, Johnson & Johnson filed its answer to the amended complaint in multidistrict litigation captioned *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litig.*, No. 3:16-md-02738 (FLW) (LHG) (the "MDL"). *Id*. The MDL involves claims against Johnson & Johnson arising out of personal injuries caused by asbestos in Johnson & Johnson's talc powder. Once Johnson & Johnson filed its answer, discovery would begin, and Johnson & Johnson's previously secret internal documents demonstrating the presence of asbestos in the talc powder and efforts to conceal that information would become widely distributed. *Id*.

The inevitability of the truth coming out was evidenced on December 14, 2018, when Reuters published an article citing internal Johnson & Johnson documents showing that Johnson & Johnson's senior executives had been aware of the presence of asbestos in its talc powder for decades, and had actively sought to conceal the information from the public. *Id*. ¶ 12. Johnson & Johnson's stock price declined more than 10% following the Reuters report. The 10% decline corresponded to a loss of $30 billion in Johnson & Johnson's market capitalization. *Id*. ¶ 13.

This decline in Johnson & Johnson's stock value is more than the amount of liability Johnson & Johnson likely faces in lawsuits regarding personal injuries linked to the asbestos in the talc products, and more than the expected decline in sales of talc products as the public becomes aware of the serious health risks associated with exposure to the asbestos in Johnson & Johnson's talc powder. *Id*. ¶ 14. The decline in the share price included a loss of faith in Johnson & Johnson itself, raising material doubts regarding the company's honesty and dependability and that of its executive leadership. For a health products company like Johnson & Johnson, which sells its products to the general public, the company's image and goodwill are particularly significant. For

example, Johnson & Johnson valued its goodwill at $31 billion as of December 31, 2017—nearly 20% of the company's overall value. *Id*.

Defendants had ample authority and opportunity to correct the record and make the truth about asbestos in its talc products known to the public. Had they done so, the Plans' participants could have avoided millions of dollars of losses resulting from the decline in value of the Johnson & Johnson stock held in their Plan accounts. *Id*. ¶ 16. Accordingly, Plaintiff seeks relief pursuant to § 409 and § 502 of ERISA, 29 U.S.C. § 1109, 1132, on behalf of all participants in or beneficiaries of the Plans who sustained losses in their retirement accounts.

### III.     ARGUMENT

#### A.     The Court Should Appoint Interim Co-Lead Counsel

"Federal Rule of Civil Procedure 23(g)(3) provides that the Court 'may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.'" *Yaeger v. Subaru of Am., Inc.*, No. CIV.A. 14-4490 JBS/K, 2014 WL 7883689, at *1 (D.N.J. Oct. 8, 2014) (quoting Fed. R. Civ. P. 23(g)). "[C]ourts choosing interim class counsel can apply the same factors that apply in choosing class counsel at the time of certification of the class, i.e., the standards set forth in Rule 23(g)(1))." *Yaeger*, 2014 WL 7883689, at *1 (citation omitted).

Accordingly, in evaluating a request for the appointment of interim class counsel, courts consider: "(i) [t]he work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources counsel will commit to representing the class." *Durso v. Samsung Elecs. Am., Inc.*, No. 2:12-CV-5352 DMC JAD, 2013 WL 4084640, at *3 (D.N.J. Aug. 7, 2013) (citations omitted).

4

In addition to the four mandatory factors enumerated above, under Fed. R. Civ. P. 23(g)(1)(B) "'the Court may also consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class and may, if it deems it necessary, direct the proposed class counsel to provide information on any subject pertinent to the appointment.'" *Garbaccio v. St. Joseph's Hosp. & Med. Ctr. & Subsidiaries*, No. CV 16-2740 (JMV), 2017 WL 1196458, at *2 (D.N.J. Mar. 13, 2017), *report and recommendation adopted,* No. CV 16-2740, 2017 WL 1181575 (D.N.J. Mar. 29, 2017) (quoting *In re Terazosin Hydrochloride*, 220 F.R.D. 672, 701–02 (S.D. Fla. 2004)).

The Court has the discretion to appoint more than one firm to act as co-lead counsel. *See*, *e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 58–59 (E.D.N.Y. 2006) (appointing four law firms as co-lead counsel); *Nowak v. Ford Motor Co.*, 240 F.R.D. 355 (E.D. Mich. 2006) (appointing two law firms as interim co-lead counsel).

Finally, the appointment of interim lead counsel without the appointment of an interim lead plaintiff is appropriate in pending ERISA class actions when the plaintiffs are "individual plan participants-not active, experienced institutional litigants." *In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 273 (S.D.N.Y. 2009). Here, the named plaintiffs are retirement plan participants, and are not active, experienced litigants.

As demonstrated below, the firms proposed as Interim Co-Lead Counsel individually and collectively satisfy each of those factors.

### B.    Proposed Interim Co-Lead Counsel Have Done Considerable Work and Investigation in Pursuing the Claims Asserted

Proposed Interim Co-Lead Counsel engaged in extensive investigation and research in preparing the complaints in this matter. Their efforts included thoroughly reviewing and analyzing: (i) Forms 5500 filed by Johnson & Johnson with the U.S. Department of Labor concerning the

Plan; (ii) summary plan descriptions and other plan-related documents; (iii) information on Johnson & Johnson's website; (iv) participants' account statements; (v) information about the MDL claims against Johnson & Johnson alleging personal injuries caused by asbestos in Johnson & Johnson's talc powder; and (vi) materials concerning Johnson & Johnson's common stock; and (vii) scholarly research concerning defined benefit retirement plans. Additionally, proposed Interim Co-Lead Counsel have fielded calls and inquiries from numerous participants in the Plans who expressed concern about their retirement Plans' holdings. These efforts culminated in the filing of the two ERISA class action complaints against Johnson & Johnson.

Clearly, proposed Interim Co-Lead Counsel have already committed substantial time and resources in the above-captioned actions to investigating and pursuing the claims of the proposed class Plaintiffs seek to represented, and they are committed to continuing those efforts. Accordingly, this factor weighs in favor of appointment of interim class counsel.

### C. Proposed Interim Co-Lead Counsel Have Experience in Handling ERISA Class Actions and Other Complex Litigation and Are Knowledgeable About ERISA Law

Proposed Interim Co-Lead Counsel have extensive experience in prosecuting ERISA and consumer class actions, and other types of class action and complex litigation as lead and co-lead counsel. Proposed Interim Co-Lead Counsel are among the most experienced class action firms in the United States, having represented plaintiffs in hundreds of class actions and other financially complex, large-scale litigations throughout the United States, as demonstrated in the declarations and firm resumes submitted in support of this motion. *See* Declaration of Todd S. Collins ("Collins Decl."); Declaration of Todd M. Schneider ("Schneider Decl."); Declaration of Samuel E. Bonderoff ("Bonderoff Decl.").

Berger's successes in ERISA lawsuits include, for example, serving as lead or co-lead counsel in *Diebold v. Northern Trust Investments, N.A.*, 1:09-cv-01934 (N.D. Ill.) ($36 million

6

recovery); *In re Lucent Technologies, Inc. ERISA Litig.*, No. 01-cv-3491 (D.N.J.) ($69 million recovery)*; In re SPX Corporation ERISA Litig.*, No. 3:04-cv-192 (W.D.N.C.) (recovery on behalf of 401(k) plan participants totaling approximately 90 percent of estimated losses); *In re Nortel Networks ERISA Litigation*, Civil Action No. 01-cv-1855 (MD Tenn.) ($21.5 million settlement in 401(k) company stock case); and *Glass Dimensions, Inc. v. State Street Bank & Trust Co.,* 1:10-cv-10588-DPW (D. Mass) ($10 million recovery on behalf of 1,500 retirement plans that invested in defendants' collective investment funds).

As the attached firm resume makes clear, the Berger firm has decades of experience successfully litigating all manner of complex and class action cases and has recovered billions of dollars on behalf of aggrieved plaintiffs.

Over many years Schneider Wallace has committed time, energy and resources to investigating disloyal and imprudent misconduct by retirement plan fiduciaries and to vigorously representing retirement plan participants in court to recover lost retirement savings resulting from that fiduciary misconduct. Schneider Wallace has successfully represented plaintiffs in numerous ERISA class actions as lead or co-lead counsel, including *In Re J.P. Morgan Stable Value Fund ERISA Litigation*, No. 1:12-cv-02548 (S.D.N.Y.) (settled for $75 million – final approval pending); *Daugherty et al v. University of Chicago*, No. 1:17-cv-03736 (N.D. Ill.) (settled for $6.5 million); *Dennard v. Transamerica Corporation*, No. 1:15-cv-00030-EJM (N.D. Iowa) ($3.8 million cash settlement and approximately $8 million in prospective fee reductions); *Bilewicz v. FMR LLC*, No. 13-10636 (D. Mass.) ($12 million cash and structural changes); *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State Street Bank & Trust Co.*, No. 10-10588 (D. Mass.) ($10 million cash settlement); *Diebold v. Northern Trust Investments*, No. 09-7203 (N.D. Ill.) ($36 million cash settlement). Through these and other cases, in 2015).

7

Schneider Wallace has recovered more than $100 million in retirement savings for participants in ERISA covered retirement plans. Schneider Wallace's extensive experience with ERISA and class actions are set forth in more detail in the Firm Profile attached to the Schneider Declaration.

Zamansky has extensive experience litigating complex issues in ERISA class actions on behalf of employees of large public companies. In a recent class action on behalf of Avon Products employees who invested in company stock and suffered losses as a result of misrepresentations associated with violations of the Foreign Corrupt Practices Act, Zamansky won a settlement of $6.25 million. In another ERISA action on behalf of J.C. Penney employees who invested in company stock and suffered losses due to a misrepresentation over the new "fair and square" pricing strategy, Zamansky won a settlement of $4.5 million. Most recently, as interim lead counsel representing International Business Machines Corporation employees in an ERISA class action, the firm won a landmark reversal in the Second Circuit Court of Appeals after dismissal by the district court. *Jander v. Ret. Plans Comm. of IBM*, 910 F.3d 620 (2d Cir. 2018). Zamansky currently serves as lead or co-lead counsel in ERISA class actions on behalf of employees of a number of companies, including Allergan, Inc., Wells Fargo and Company, Walt Disney Company, National Indemnity Company, Lifetouch, Inc., and Edison International.

There can be no doubt that these firms are experienced in ERISA law, class action and complex litigation and they are knowledgeable about the relevant areas of law. These factors support appointment of the proposed Interim Co-Lead Counsel.

### D. **Proposed Interim Co-Lead Counsel Will Commit the Resources Necessary to Represent the Class**

Proposed Co-Lead Interim Counsel have substantial resources at their disposal, including three law firms, which together have more than 95 lawyers and offices in several major cities

throughout the country. As the declarations of each of the proposed law firms make clear, each Proposed Interim Co-Lead Counsel firm is prepared to commit the necessary resources to litigate the consolidated actions through trial and post-trial appeals, as they each have done in numerous cases over the years. Moreover, the proposed co-lead firms have the financial resources to retain qualified experts, and undertake other substantial costs of litigation. Furthermore, "it is evident from the work that Proposed Interim Counsel have undertaken to investigate the claims at issue here that they are willing to expend substantial resources in representing the class." *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 19 (S.D.N.Y. 2016). Thus, like the others, this factor further supports appointment of the proposed interim class counsel.

### E. Interim Plaintiff's Liaison Counsel

Proposed Interim Liaison Counsel, Lite DePalma, is based in Newark, New Jersey and has successfully litigated and resolved hundreds of complex-litigation cases around the United States over the past 25 years. *See* Declaration of Joseph J. DePalma ("DePalma Decl.") at ¶ 2.

In that time, Lite DePalma has served as Lead, Co-Lead, or Liaison Counsel in numerous class actions, many of which asserted ERISA violations. *See* DePalma Decl., Ex. A (Firm Biography). For example, Mr. DePalma and Lite DePalma have served as Co-Lead Counsel in class actions that resulted in significant recoveries for the State of New Jersey. *See Reginald Newton v. Tenet Healthcare Corp.* (Tenet Healthcare Securities Litigation), No. 02-cv-8462 (C.D. Cal.) ($281.5 million settlement); *In re Motorola Securities Litig.*, Civ. No. 03-cv-287 (N.D. Ill.) ($193 million settlement reached three business days before trial). Mr. DePalma and his firm served as Liaison Counsel in a case that resulted in what was at the time the largest insurance sales practices settlement ever. *See In re Prudential Ins. Co. of America Sales Practices Litig.*, Nos. 97-5155, 97-5156, 97-5217, 97-5312 (D.N.J.) (over $4 billion paid out to class members). Mr. DePalma also played a pivotal role in resolving a complex ERISA matter that involved two appeals

9

to the Third Circuit on behalf of a class of participants in a retirement plan alleging breaches of fiduciary duties. *See In re Schering-Plough Corp. ERISA Litig.*, No. 03-cv-1204 (D.N.J.) ($8.5 million settlement).

Lite DePalma's substantial experience serving as Liaison Counsel in this Court and successes in pursuing ERISA class actions demonstrate its capacity to ensure this litigation proceeds in the most efficient manner possible and support its appointment as Interim Plaintiffs' Liaison Counsel. DePalma Decl. at ¶ 3.

### IV. CONCLUSION

For the reasons stated above, the Court should grant Plaintiffs' unopposed motion for appointment of interim class counsel pursuant to Fed. R. Civ. P. 23(g), and appoint Berger Montague PC, Schneider Wallace Cottrell Konecky Wotkyns LLP, and Zamansky LLC as Interim Co-Lead Class Counsel, and appoint Lite DePalma as Interim Plaintiff's Liaison Counsel.

**LITE DEPALMA GREENBERG, LLC**

Dated: February 28, 2019

*/s/ Joseph J. DePalma*
Joseph J. DePalma
570 Broad Street, Suite 1201
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com

**BERGER MONTAGUE PC**
Todd S. Collins
Eric Lechtzin
Ellen T. Noteware
1818 Market Street
Philadelphia, PA 19103
Telephone: 215-875-3000
Facsimile: 215-875-4604
tcollins@bm.net
enoteware@bm.net
elechtzin@bm.net

**SCHNEIDER WALLACE COTTRELL**
   **KONECKY WOTKYNS LLP**
Garrett W. Wotkyns*
John J. Nestico*
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona 85253
Telephone: 480-428-0145
Facsimile: 866-505-8036
gwotkyns@schneiderwallace.com
jnestico@schneiderwallace.com

**SCHNEIDER WALLACE COTTRELL**
   **KONECKY WOTKYNS LLP**
Todd Schneider*
James A. Bloom*
Kyle G. Bates*
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: 415-421-7100
Facsimile: 415-421-7105
tschneider@schneiderwallace.com
jbloom@schneiderwallace.com
kbates@schneiderwallace.com

**SCHNEIDER WALLACE COTTRELL**
   **KONECKY WOTKYNS LLP**
Peter B. Schneider*
3700 Buffalo Speedway, Suite 300
Houston, Texas 77098
Telephone: 713-338-2560
Facsimile: 866-505-8036
pschneider@schneiderwallace.com

**ZAMANSKY LLC**
Samuel E. Bonderoff*
Jacob H. Zamansky*
Edward H. Glenn, Jr.*
Justin Sauerwald
50 Broadway, 32nd Floor
New York, NY 10004
Telephone: (212) 742-1414
Facsimile: (212) 742-1177
samuel@zamansky.com

*Counsel for Plaintiffs*

11